GALVESTON, H. & S. A. RY. CO. v. DOZIER et al.

(Court of Civil Appeals of Texas. El Paso. Dec. 4, 1913. On Rehearing, Jan. 22, 1914.)

TRIAL (§ 234*) — INSTRUCTIONS — MISLEADING INSTRUCTIONS.

In an action for the death of a person in a crossing accident, where the court submitted as grounds of recovery the engineer's failure to keep a proper lookout, excessive speed, and discovered peril, an instruction that the burden was on plaintiffs to prove by a preponderance of the evidence the facts submitted as material to their right to recover, and that the burden was likewise upon the defendant to prove by a preponderance of the evidence the facts submitted as material to its defense, was contradictory, and calculated to lead the jury to believe that the burden rested upon defendant to disprove negligence, since it did not limit the burden resting upon defendant to the affirmative defensive issue of contributory negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. § 234.*]

McKENZIE, J., dissents.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by Avarillo Dozier and others against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Lane, Wolters & Storey, Baker, Botts, Parker & Garwood, Wm. A. Vinson, and Bentley Nelson, all of Houston, for appellant. John W. Parker, of Houston, for appellees.

HIGGINS, J. Appellant prosecutes this appeal from a judgment rendered against it

for the sum of $7,000 in favor of the minor children of W. A. Dozier, Sr., who was killed by a passenger train of the appellant on September 27, 1911, near the town of Harrisburg, between the cities of Houston and Galveston. Appellant's line of railway between the cities mentioned crosses a public road running north and south to Harrisburg, known as the "Broadway Road." On the date mentioned the deceased was in a buggy, drawn by a mule, and, while crossing the track at the crossing mentioned, was struck and killed by an engine drawing a passenger train bound from Galveston to Houston.

The plaintiffs' right to recover was submitted upon three grounds duly pleaded: (a) Failure of the engineer to keep a proper lookout while approaching the crossing; (b) excessive speed, dangerous to those rightfully using the crossing; and (c) discovered peril. The defendant answered by general denial and a special plea of contributory negligence. Error is assigned to the eighth paragraph of the court's charge, which reads: "The burden is on the plaintiffs to prove by a preponderance of the evidence the facts which are submitted to you in this charge as material to their right to recover, and the burden is likewise upon the defendant company to prove by a preponderance of the evidence the facts which are submitted to you in this charge as material to its defense; but, in considering the matter of burden of proof, with reference to both parties, you will look to all the evidence, without regard to whether it was introduced by the one party or the other."

The paragraph of the court's charge presenting the case from the standpoint of the appellant reads: "On the other hand, if you do not believe from a preponderance of the evidence that the engineer failed to use the care a man of ordinary prudence would have done to discover the presence of the said Dozier at the crossing, and to avoid injuring him, or if you do not believe he ran the train at an excessive rate of speed, which was dangerous to persons upon, or about to enter upon, the said crossing, and on that account did not have the control of the train that was essential and necessary for him to have in order to avoid injuring persons at the crossing who were in the rightful use thereof, and who were using the same in the exercise of ordinary care, and if you do not believe from a preponderance of the evidence that the said engineer actually discovered the peril of said Dozier in time by slackening the speed of the train to have avoided injuring the said Dozier, or do not believe that a man of ordinary prudence, situated as the said engineer was, would have undertaken to avoid injuring the said deceased by slackening the speed of the train, under the circumstances, or if you do not believe, though the said engineer may have discovered the peril of the said Dozier, if

there was such peril, and failed to slacken the speed of the train, that such failure was a proximate cause of the injury of said Dozier, you will, without inquiring further, return a verdict for the defendant. Or, if you believe from the evidence that what the engineer and fireman did, or omitted to do, was what a man of ordinary prudence, situated as they and each of them were, would or would not have done under the same or similar circumstances, you will likewise return a verdict for defendant."

If the paragraph of the court's charge upon the burden of proof had limited the burden resting upon defendant to the affirmative defensive issue of contributory negligence, it would have been entirely proper. However, it does not do so. It instructs that the burden is upon defendant to prove by a preponderance of the evidence the facts submitted as material to its "defense." Manifestly upon the issues of negligence vel non, submitted in the paragraph of the charge last quoted, there is no such burden. Viewing the charge from its most favorable point of view, it is contradictory, and, in our opinion, it was calculated to lead the jury to believe that the burden rested upon defendant to establish the negative of the issues of negligence vel non. Under the state of the evidence in this record, we are not prepared to hold that the error is a harmless one, under provisions of rule 62a (149 S. W. x).

A reversal of this case is also asked upon the ground that the verdict and judgment are unsupported by the evidence, in that it appears therefrom that the deceased was guilty of contributory negligence in driving upon the appellant's track in front of the approaching train which struck him, which was the proximate cause of his death, and, further, that the issue of discovered peril is not raised by the evidence. Chief Justice HARPER and myself are unable to concur in this view; but, in view of a reversal for the error in the charge above noted and of a retrial, we refrain from a discussion of the facts.

Associate Justice McKENZIE dissents, being of the opinion that the evidence is insufficient to support the judgment in the particulars noted, and that the cause should be reversed and rendered. He will later file an opinion setting forth his views upon this question.

Reversed and remanded for the error noted in the charge.

McKENZIE, J. (dissenting). In view of a reversal of the case for a new trial, I shall refrain from any comment upon the evidence, further than necessary in stating reasons why I think the case should be reversed and rendered.

On the north side of appellant's right of way some heavy timber is growing, which obstructs the view of the right of way to those traveling the dirt road going to the south,

approaching the railroad crossing, until the right of way is reached. The right of way itself is free from any obstructions to the east, and the track is straight for a distance of about one-quarter of a mile, when the right of way and track curves to the south. There are two crossings testified to, the first at about 150 or 200 yards west of a section house; the section house being located at about the curve. The second is further west, at which the accident occurred. The testimony shows that the proper signal was given for each of the crossings. The signal for the first crossing was given before the train reached the curve, and the signal for the second crossing was given at the signal post, which is located about 700 feet east thereof. The train was a regular passenger train, consisting of six coaches, engine, and tender, and was running on regular schedule time, making about 55 or 60 miles per hour during running time. The engineer's testimony is to the effect that he sounded the whistle for both of the crossings. · After sounding the whistle for the first crossing, giving the usual signal, he also sounded the whistle for Harrisburg Station, and immediately thereafter answered the signal of the conductor for stopping the train at Harrisburg Station by three blasts of the locomotive whistle, after which he sounded the signal for the second crossing at the 700-foot signal post. He further testified that his train was within 150 or 200 feet of Dozier when he first discovered him, and he immediately applied the emergency brake, opened the sand blower, and sounded the danger signal, using every means at hand to stop the train and avoid the accident. The train was brought to a stop at about 800 feet, and it could not be stopped sooner. According to my views, the undisputed evidence is conclusive to the effect that Dozier's peril was not discovered in time by the train operatives for them to have avoided the accident or its results. The evidence, to my mind, is undisputed, and is conclusive to the effect that Dozier was guilty of contributory negligence, which negligence contributed to and was the cause of the injury.

I quote part of the testimony of S. L. Moore, who was a witness for plaintiffs: "I think it was along about sundown when that accident occurred, just a little before or after. * * * I did state a little while ago something with reference to Mr. Bonner in company with some others in an automobile who was coming towards Houston. I was going in the opposite direction from Bonner when I saw him, and so was Mr. Dozier. Mr. Dozier was ahead of us, and we had never passed him before getting to that track; we had never caught up with Mr. Dozier. Mr. Dozier was driving the mule, which was attached to a light buggy, without a top. When we heard the train coming, we stopped. I did not hear the rumbling of the train first; I was not attracted to it until I heard it whistle for a crossing, not this one, but the one beyond it. I don't know whether that crossing where I first heard it whistle for is between the section house and the crossing that I was on or not, as I have never been down there; I understand, however, that there is a crossing down there, but I don't know whether it is beyond or on this side. I did not state a while ago that when the train whistled it was my impression that it had passed the section house, not the first whistle it hadn't, but the second whistle, I mean, for this crossing up here, and to attract his (Dozier's) attention; there was something on the track, and I think that whistling was this side of the section house. When we heard that train whistle for the first time, we stopped, because we didn't want to take any chances; we knew that was the evening train, and it run very rapidly; it is one of the special trains running from Galveston to Houston. I don't know what the distance was from where we were to the track at that time (I didn't measure that distance the other morning; I forgot to); but we were within, I will say, 100 feet of the track when we stopped. We stopped because we heard the train come. When we stopped we had noticed a vehicle ahead of us, but had paid no attention to him; I did not observe his (Dozier's) danger until we had stopped. When we stopped because of hearing the train, we noticed him (Dozier); he then must have been about 15 feet from the track—well, I will say 20 feet from the track—that is, when we stopped, and I observed how close he was, and still going towards the track. Just about that time the train had commenced whistling for that crossing, and it continued to whistle—well, there was a little space of time between the time it whistled for that other crossing and the time it commenced to whistling for this one. When I looked and saw Mr. Dozier within about 20 feet of the track, just about that time the whistle began to blow for some alarm; I think it was about that time, and he (Dozier) was still approaching the track; he was approaching it slowly. Dozier was not whipping his mule at that time; I don't think he was. The mule seemed to be just going slowly on; but I thought he was going to stop, and I says to Mr. Bartlett, I says, 'I believe,' after I saw he was still approaching, 'that old gentleman is going to try to cross,' and the mule still kept going forward. At that time the mule had not yet reached the track, and about the time it did reach the track, or had almost reached the track, Mr. Bonner came across very swiftly in his automobile, and I think Mr. Dozier, seeing Mr. Bonner coming across so easily and so swiftly, concluded he could make it; of course that is just an opinion of mine. At any rate, when he was still 20 feet from the track, why, this whistling began; but he didn't stop, just kept on going. At the point he then was he could have seen the train; I think

he could. At that time I thought he was going to stop; I didn't see any reason brought to my mind, but I thought that any reasonable man would have done so. I thought there was reason for him to stop. As to whether I say he continued to go ahead, it didn't seem he was urging the mule to go ahead; but he was going ahead though. I did not get the impression from looking at Dozier at the time that he was really looking, or that he had his head down. He seemed to be interested in something, but I don't know whether the mule was stubborn, and he was trying to prevent the mule from going across or what, but he didn't seem to urge the mule on until after the mule got onto the track; then he began to urge the mule. That was not before the buggy was on the track; but it was when the mule and buggy was on the track. The mule did not exactly stop them; but the mule didn't go forward any. What I mean is, the mule just kept going sideways, back and forth. At any rate the mule got on the track, and the buggy was on the track, and the mule didn't seem to go forward; it seemed he didn't want to go forward. He was just mulish; that is 'it exactly. That mule seemed to want to go to one side instead of going forward; it didn't seem as though he wanted to go down that little incline. You could hardly call that anything but a stop so far as the buggy was concerned; you might say that the buggy was stationary, and seemingly working back and forth. He did start up before being struck, and the mule went forward. At the time the buggy got onto the track Mr. Dozier got up and commenced "lamming" the mule, and he was lamming him for all he could. I don't know whether he had a whip or just a stick. I am not absolutely sure that Mr. Dozier did not whip the mule before he got onto the track; I am not sure he didn't strike the mule before he got onto the track, but I don't think, I don't think he commenced whipping the mule until he saw he was bound to get across to be safe. For 20 feet before he got to the track he could see the train coming. We heard the whistle blown, and could hear it blown for that space between the track—from that space from the track. I wouldn't say whether the bell was ringing or not; there would have been some difficulty in hearing the bell ringing with the whistle blowing as it was. Mr. Dozier was almost on the track at the time Mr. Bonner came over the track; that is, the mule was, the mule Dozier was driving. I don't think that Mr. Dozier was whipping the mule when Mr. Bonner passed over; but I think that about that time was when he concluded he could get across the track, or the mule had got on the track, and he thought his safety depended on his getting across the track, and that it was then that he commenced whipping the mule. At the point where I stated I stood at that time, that is,

about 100 feet from the track, I could not see the train; that is, I couldn't have a full view of the train as it approached. I could, however, recognize that there was a train. I knew it by its rumbling and its whistling, and I could also see through the trees enough to see that it was a train. I really don't think that there are any trees on that right of way of defendant railroad company along there."

I think the law is well established that the contributory negligence of Dozier in placing himself in a dangerous position upon the track at the crossing, under the circumstances detailed by the witness Moore, will prevent a recovery for death, caused by his being struck by the train, when it affirmatively appears, as I construe the evidence in this cause, that those in charge of the train did not *actually* see his danger in time to avoid the accident. The fact that the train operatives could have discovered Dozier's peril in time to have avoided injury to him by the exercise of reasonable diligence does not make the defendant liable. The rule of discovered peril does not make the railroad company liable, unless the peril is actually discovered in time to prevent the accident, and liability does not commence until the peril is actually discovered. The burden is upon the plaintiffs to establish the fact that the train operatives discovered Dozier's peril in time to have avoided the injury. In this, it seems to me, they have wholly failed.

The case is one in which it appears that all the facts pertaining to the accident are developed, and, if I am correct in the analysis of the evidence, the proper disposition of the case should be to reverse, and render judgment in favor of appellant. Because of the views which I entertain as to the showing of the evidence, I respectfully enter my dissent.

### On Rehearing.

McKENZIE, J. Upon a reconsideration of the evidence, I adhere to the views expressed in my dissenting opinion that Dozier was guilty of contributory negligence, and that the trial court should have so instructed the jury. Possibly there is in the record some evidence of such probative force as would authorize the trial court to submit the issue of discovered peril to the jury. I am of opinion, however, that the evidence strongly preponderates against such issue. It therefore becomes necessary to change the views I expressed in the dissenting opinion, and to now hold that the cause should be reversed and remanded for a new trial.

I concur with the majority of the court that the eighth paragraph of the court's charge was error, in that it instructs the jury that the burden was upon the defendant to prove by a preponderance of the evidence the facts submitted as material to its defense.